UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MOON LEE,

     Plaintiff,

v.                             Case No.: 1:22-cv-00340-MW-ZCB

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant the University of Florida Board of Trustees moves the Court pursuant to Federal Rule of Civil Procedure 56 for entry of a final summary judgment as to all claims raised in Plaintiff's Second Amended Complaint. In support thereof, Defendant states as follows:

## I.    STATEMENT OF FACTS

### A.    Plaintiff's Employment History

Plaintiff was born in South Korea. ECF 51-1, 104. Plaintiff immigrated to the U.S. in 1993. *Id.* at 8. Plaintiff earned a master's degree from the University of Florida ("UF") in 1997, and her Ph.D. from UF in 2001. *Id.* at 13.

Plaintiff was employed at Washington State University from 2001 to 2009. *Id.* at 14. UF hired Plaintiff in 2009 as a tenured associate professor in the College

of Journalism and Communications (the "College"). *Id.* at 14 – 15, 23, 31. Plaintiff worked in the College's Department of Public Relations (the "Department"). *Id.* at 41, 72, ex. 1. Plaintiff was hired by John Wright, the Dean of UF's College of Journalism in 2009, and Spiro Kiousis, the chair of the Department at the time. ECF 51-1, 24, 27 – 28; ECF 51-2 ¶ 5.[1]

On July 2, 2021, Plaintiff sent a letter to Dean Hub Brown notifying UF that she was resigning from her position at UF to take a position Syracuse University. ECF 51-1, 74 – 75, ex. 4. UF accepted her resignation on July 8, 2021. ECF 51-1, 75, ex. 5; ECF 51-3 ¶ 22. Plaintiff testified that she resigned from UF because she believed there was no path for her to be promoted to full professor at UF. ECF 51-1, 25, 43-44, 68. Plaintiff also testified that she resigned because she "never experienced any kind of procedure" and she received a counseling letter under what she perceived to be unfair circumstances. *Id.* at 152 – 56. Plaintiff admits that she would still be employed by UF had she not resigned. *Id.* at 68. Notably, Plaintiff never testified at her deposition that her resignation was based on any mistreatment she received because of her national origin, her sex, or her engagement in any protected activity.

---

[1] Defendant requests that the Court review all portions of ECF Nos. 51-2 through 51-12. As such, these exhibits are not highlighted per ECF No. 38 to avoid highlighting the entire document. However, Defendant will supplement the record with highlighted versions of these exhibits should the Court require.

## B.     Plaintiff's Complaints

Plaintiff raises many complaints in the operative complaint (ECF No. 11) of perceived mistreatment by UF that she alleges form the basis of her claims.

### i.     Plaintiff's Promotion Attempts

Plaintiff applied for promotion to full professor, or "Professor," on three occasions.  Plaintiff first submitted a promotion application in 2014.  ECF 51-1, 29; ECF 51-4 ¶ 4, ex. A.  During this promotion attempt, Diane McFarlin, Dean of the College, supported Plaintiff's application for promotion.  ECF 51-4 ¶ 4, ex. A, 101 - 03.  However, Plaintiff's promotion was not approved at the University level.  On June 3, 2015, UF President W. Kent Fuchs notified Plaintiff that her request for promotion was not approved because her record did not meet the criteria for distinction in research and teaching.  *Id.* at ¶ 7, ex. D.

Plaintiff reapplied for promotion in 2018.  ECF 51-1, 30; ECF 51-4 ¶ 4.  Marcia DiStaso was the chair of the Department at this time.  ECF 51-1, 30.  Dr. DiStaso supported Plaintiff's application for promotion to full professor.  ECF 51-3 ¶ 18, ex. G.  However, Dean McFarlin did not support Plaintiff's application for promotion to full professor.  ECF 51-4 ex. B, 247 - 51.  In fact, Plaintiff was advised to withdraw her application by Dean McFarlin because the College would be unable to support her promotion case due to multiple factors, including Plaintiff's teaching evaluation scores, research performance, evaluations from external reviewers, and

lack of support from the College's tenure and promotion committee. ECF 51-1, 47 – 48; ECF 51-2 ¶ 6. It was the general practice of the College administration to advise faculty members to withdraw their full professor promotion applications when one or more factors indicated that the promotion request would not be successful. ECF 51-2 ¶ 6. Thus, it was not a deviation from the College's standard practice to advise Plaintiff to withdraw her application. *Id*. Tenured professors at UF are not capped on the number of times they may apply for promotion to full professor. *Id*.

Ultimately, Plaintiff's promotion request was again denied at the University level.[2] On June 26, 2019, Dr. Joseph Glover, UF's Provost, issued a letter informing Plaintiff that her promotion request was not approved because her record did not meet the criteria for distinction in research and teaching at the full professor level. ECF 51-1, 42, 76 - 77, ex. 6; ECF 51-4 ¶ 8, ex. E.

Plaintiff testified that she was not surprised that her second promotion request was denied. ECF 51-1, 77. When asked why she thought her promotion request was denied, Plaintiff merely stated that she was "held to a different standard," but could not elaborate on this claim or provide any factual support. *Id*. at 77 – 81. Plaintiff

---

[2] Faculty promotion decisions at UF are made at the University level. Per the 2017 – 2019 Collective Bargaining Agreement, the President or designee shall make the final decision whether to promote a candidate.

did not attribute the denial of her second promotion to her national origin or sex at her deposition. *Id.*

When asked to identify a comparator that was promoted to full professor, Plaintiff initially could not identify one. ECF 51-1, 79 – 81. However, later in her deposition Plaintiff identified two individuals, Ted Spiker and Juan-Carlos Molleda. *Id.* at 100 - 101. In the view of the College's administration, Dr. Spiker's and Dr. Molleda's promotion cases were much stronger than Plaintiff's. ECF 51-2 ¶ 10, 11.

On August 8, 2019, Plaintiff, through her union, filed a "Step 1" grievance challenging the denial of her 2018 promotion under the 2017 – 2019 Collective Bargaining Agreement between the University Board of Trustees and the United Faculty of Florida ("CBA").[3] ECF 51-1, 108 – 10; ECF 51-6. Plaintiff did not allege that UF violated Article 11 (Nondiscrimination) in her Step 1 Grievance. However, in her Step 2 grievance form, submitted on September 24, 2019, Plaintiff alleged that UF, among other violations, violated Article 11 of the CBA, stating, "[t]he university did not satisfy its nondiscrimination obligations, among other violations." ECF 51-7 ¶ 7, ex. C. The Assistant Provost denied Plaintiff's Step 2 grievance on December 20, 2019. ECF 51-8. In response to her discrimination claim, the Provost stated:

> With respect to Article 11.2 and other sections of Article 11, the simple
> assertion that the University discriminated against her because of

---

[3] Article 28 of the CBA provides for a three-step grievance process. ECF 51-5, 9.

gender or ethnicity is not proof.  The faculty member always had the right under 11.2(e) to file such a complaint.  She did not do so."

*Id.*

Plaintiff elected to proceed to arbitration with her grievance on January 27, 2020.  ECF 51-9.  The Arbitrator sustained Plaintiff's grievance in part based on procedural matters and directed UF to "correct the violations and remove inappropriate dossier entries according to its established criteria and permit Plaintiff's reapplication for promotion retroactive to July 1, 2019."  ECF 51-7 ¶ 7, ex. D, 41.  Plaintiff abandoned her discrimination claim during the Arbitration process, so it was never addressed by the Arbitrator.  ECF 51-7 ¶ 7, ex. D.

Despite being employed at Syracuse University, Plaintiff again applied for promotion to full professor at UF in 2022.  ECF 51-4 ex. C.  In accordance with the Arbitrator's decision, UF reconsidered Plaintiff's 2018-2019 promotion application. ECF 51-4 ex. C, 335.  The chair of the Department, Myiah Hutchens, did not support Plaintiff's promotion to full professor.  *Id.* at 531 - 33.  Similarly, Dean Hub Brown, Dean McFarlin's successor, noted in the Dean's letter to the Academic Personnel Board that Plaintiff "has unfortunately not produced a record that meets the standards for promotion to the full professor level."  *Id.* at 538 - 41. Plaintiff's promotion request was again denied at the University level.  By letter dated June 26, 2023, Dr. Glover informed Plaintiff that her request for promotion to full professor

was not approved because her record did not meet the criteria for distinction in her two primary areas of assignment, research and teaching.  *Id.* at ¶ 9, ex. F.

There is no evidence that any UF faculty member or administrator within the College ever told Plaintiff that she would never be promoted to full professor.  ECF 51-1, 44 – 46; ECF 51-2 ¶ 8; ECF 51-3 ¶ 17.  The Provost, Dr. Glover, never made such a statement.  ECF 51-4 ¶ 11.  Instead, Plaintiff was operating under her own assumption that her promotion applications would not be "fairly evaluated."  ECF 51-1, 45 - 48.  Plaintiff never raised any complaints about this issue to College administration.  ECF 51-2 ¶ 8.

### ii.     Plaintiff's Other Complaints

Plaintiff makes a number of other complaints.  She alleges that starting in the Fall 2016 semester and continuing through the Spring 2021 semester, her "teaching assignments were changed to much less desirable and more difficult to teach classes that increased the difficulty of her research requirements and lowered her student evaluation scores," and "her service load was increased dramatically."  ECF 11, ¶¶ 20 - 24, 28, 30, 35, 40, 41, 44.  Plaintiff testified that her student evaluations changed after she was assigned to teach different undergraduate courses at UF, such as "research methods," which she characterizes as one of the most unpopular courses among undergraduate students.  ECF 51-1, 129 – 30.  Plaintiff contends that it was her assignment to "research methods" courses that were the cause of her lower

student evaluation scores. *Id.* at 130. The facts paint a different picture. The addendum to Plaintiff's offer letter from UF listed her teaching assignment as "two courses both fall and spring semesters which include PUR3500: Public Relations Research and PUR4800: Public Relations Campaigns. Any other course assignments will be discussed specifically with the department chair." ECF 51-3 ¶ 6, ex. B. Plaintiff taught PUR3500: Public Relations Research 11 times (8 times before fall 2016) and PUR4800: Public Relations Campaigns five times before Dr. DiStaso became responsible for the undergraduate public relations teaching schedule. Dr. DiStaso was the Chair of the College's Public Relations Department from July 1, 2017, until May 1, 2022, and was responsible for Plaintiff's teaching assignments each semester during her tenure as chair. *Id.* at ¶ 3, 4. Plaintiff did not teach PUR3500: Public Relations Research in any semester that Dr. DiStaso was responsible for the teaching schedule (from Spring 2018 on). *Id.* at ¶ 6. Plaintiff taught PUR4800: Public Relations Campaigns three times between Spring 2018 until the end of her employment, and Plaintiff requested to teach that course each time during this period. *Id.* Prior to each semester, Dr. Distaso would consult with Plaintiff regarding her course assignment preferences. *Id.* at ¶ 5, ex. A. At no point in time did Plaintiff ever express any dissatisfaction to Dr. DiStaso regarding her course assignments. *Id.* The only concern with teaching assignments that Plaintiff ever expressed was with UF's policy on in-person classroom teaching for the Spring

2021 Semester during the COVID-19 pandemic.  *Id.* at ¶ 9, ex. A, 26 - 32.  Plaintiff requested to teach her courses online that semester.  *Id.*  However, this request could not be accommodated due to UF's policy on in-person teaching for that semester. *Id.*  This issue was resolved in accordance with UF's requirements.  *Id.*

As for Plaintiff's service load (the percentage of time that a faculty member spends on service), Plaintiff's self-reported service load was routinely below that of both her target service goal and faculty average throughout her tenure at UF.  *Id.* at ¶ 10.  Plaintiff's service expectations did increase 25% in the Fall 2020 semester, but this was the result of Plaintiff receiving a course release from her union, resulting in her teaching one less course that semester.  *Id.*  Plaintiff elected to make up the 25% effort percentage she would have dedicated to teaching the second course to service, hence the 25% increase in her service load.  *Id.*

Plaintiff's allegations regarding her service load are also conflicting.  On one hand, she complains that her service load was increased.  On the other hand, she complains that UF stripped her service role as faculty advisor to the Asian Student Public Relations Association ("APRSA"), which is also untrue.  ECF 11 ¶ 42.  Dr. Distaso reached out to Plaintiff and Linjuan Men, another Department faculty member, on October 14, 2019, regarding their interest in serving as faculty advisor to the student group.  ECF 51-3 ¶ 11, ex. E, 46.  In response, Plaintiff stated, "Hi Marcia, I think this is a good idea! I'd be happy to serve as a faculty advisor for a

while since Rita is chairing a search committee." *Id.* In the same email chain, Dr. Men stated, "Hi Marcia, I agree that this is a nice idea! I'd be happy to take over from Moon at a future time as the faculty advisor. Thanks so much to Moon for taking this on now!" *Id.* When Dr. DiStaso approached Plaintiff about having Dr. Men serve as the faculty advisor for the 2020 – 2021 year, with the role rotating back to Plaintiff the following year, Plaintiff informed Dr. DiStaso that she did not want to give up the service role, remaining faculty advisor until she left UF. *Id.* at ¶ 11.

Plaintiff alleges that in the Spring 2020, Fall 2020, and Spring 2021 semesters, UF denied admittance to Ph.D. applicants that expressed interest in working with her and intentionally assigned Ph.D. students who expressed interest in working with her to other faculty members. ECF 11 ¶¶ 40, 41, 44. Plaintiff claims she heard from an unnamed source that a candidate who listed her as a potential advisor was admitted by UF but assigned to another professor as faculty advisor. ECF 51-1, 131. Plaintiff was unable to name the student, any specific person at UF who denied her graduate students, or a date when these alleged graduate student issues began. *Id.* at 130 – 33. Again, the facts refute Plaintiff's claims. Graduate student admissions are handled by the College Graduate Committee, with student admissions requiring support from at least four of eight of the committee members. ECF 51-3 ¶ 12. Dr. DiStaso, who served on the Graduate Committee from 2017 – 2022, never voted, nor was aware of anyone voting, on the admission of a Ph.D. applicant based on the

applicant's faculty advisor request. *Id*. During Plaintiff's tenure at UF, seven applicants accepted into the College's Ph.D. program listed Plaintiff as a potential faculty advisor. *Id*. at ¶ 13. Of these seven applicants, two were assigned to their first choice for advisor, four were assigned to Plaintiff, and one assigned to another faculty member who better fit the student's area of research. *Id.* Of the four students assigned to Plaintiff, only two listed Plaintiff as their first choice of faculty advisor on their application. *Id.* Plaintiff served as a faculty advisor to a Ph.D. student during the following time periods – Fall 2010 to Fall 2013, Fall 2013 to Spring 2020, Fall 2014 to Summer 2018, and Fall 2020 until her resignation. *Id.* at ¶ 13. Moreover, the assignment of an initial faculty advisor does not occur until after an accepted applicant matriculates. *Id.* at ¶¶ 14, 15. Initial faculty advisor assignments are made no later than March 1st each year. *Id.* at ¶ 14.

Plaintiff's claim that she was denied the opportunity to work with and mentor graduate students is also inaccurate. During the 2020 – 2021 academic year, Plaintiff served as the chair for a Master's student, a member on two Master's committees, and served as chair for a doctoral student. *Id.* at ex. F. Plaintiff also had a conference presentation with a graduate student. *Id.* As noted above, Plaintiff also served as a faculty advisor from the Spring 2020 semester until her resignation. *Id.* at ¶ 13.

Plaintiff did receive an unsatisfactory rating for research in her 2020 – 2021 yearly evaluation, but the rating was based on Plaintiff failing to satisfy, for a second

consecutive year, the College's standard for research productivity, which was having at least two refereed publications a year. *Id.* at ¶ 16, ex. F.

Plaintiff's claim that that in the Spring 2020, Fall 2020, and Spring 2021 semesters, she was under constant and public surveillance from her supervisor is also unsupported by any evidence. ECF 11 ¶¶ 40, 41, 44. Plaintiff did not mention this alleged surveillance during her deposition, nor does UF have any records of complaints by Plaintiff mentioning any such surveillance. Dr. DiStaso denies surveilling, harassing, or treating Plaintiff differently than any other faculty member in the Department. ECF 51-3 ¶ 19.

Plaintiff claims that in 2015 she was denied her request for sabbatical with full pay, but was granted only sabbatical with half pay. ECF 11 ¶ 18. Plaintiff was one of five faculty applicants for sabbatical that year, with other applicants receiving stronger endorsements. ECF 51-2 ¶ 15. After consulting with Plaintiff, the College's sabbatical committee and Plaintiff mutually agreed that Plaintiff would receive a full year (two-semester) sabbatical with half pay. *Id.* Of the five applicants that year, two received a two-semester sabbatical, and three only received a one semester sabbatical, with Plaintiff being granted the option to extend her sabbatical over two semesters. *Id.*

### iii. Plaintiff's discrimination/retaliation allegations

When asked why she believes she was discriminated against because of her gender, Plaintiff responded:

> Q: And what evidence do you have of having been discriminated against because you're a female?
>
> A: I was put in a lot of services and other -- again, I think that other faculty – male faculty members who are similarly situated, they did not -- I do not believe that it's my -- believe that all these curriculum vitas that we review – I reviewed over the period of time since this issue's happened, that -- like I was held to different standard based on my gender.
>
> Q: Give me specifics of how you were held to a different standard.
>
> A: Again, I think that if you looked at what's been circulated and the things that were the successful cases that have been presented, I believe that there were gaps between the people who were promoted based on their -- like promoted, a very clear distinction was that -- I really believe that.
>
> Look at our makeup for this. I think that there are like only one -- there was only one Asian female professor, full professor, in the entire college, and I did not think that -- I really felt like that it is beyond my abilities to produce and follow the guidelines to be promoted successfully – based on like a comparison.  So we have many previous cases who got promoted successfully. They're with less qualifications, got promoted and particularly nation of origin that I believe that previous cases assures that there's something going on beyond what someone could have like produced.

ECF 51-1, 97 – 99.  Plaintiff provided the same basis to support her claim that UF discriminated against her because of her national origin.  *Id.* at 105 – 06.  Plaintiff was unable to identify any comments about her sex or national origin.  *Id.* at 122 -

25. At no point during her deposition did Plaintiff testify that she was subjected to any harassment attributed to her gender or national origin.

Despite UF publishing detailed and publicly available information on its website describing how employees may submit a complaint of discrimination or harassment, Plaintiff never filed a complaint with UF Human Resources ("UFHR") or any other appropriate party at UF alleging discrimination. ECF 51-1, 114; ECF 51-10 ¶¶ 7, 9. UFHR never opened an investigation into a complaint of discrimination or harassment involving Plaintiff. ECF 51-10 ¶ 9. Had Plaintiff ever filed a complaint alleging unlawful discrimination or harassment, the complaint would have been investigated by UFHR personnel. *Id.* at ¶ 5. Instead, as detailed above, Plaintiff filed a grievance through her union, the United Faculty of Florida, against UF under the CBA alleging discrimination in conclusory fashion. ECF 51-1, 108 – 09, 114 – 15.

Plaintiff filed a complaint of discrimination on January 27, 2022, with the Florida Commission on Human Relations ("Charge").[4] ECF 51-1, 90, ex. 8; ECF 51-7 ¶ 4, ex. A. In the Charge, Plaintiff alleged that she was discriminated against

---

[4] Pursuant to section 760.11(1), "On the same day the complaint is filed with the commission, the commission shall clearly stamp on the face of the complaint the date the complaint was filed with the commission." The Commission's date stamp on the charge is January 27, 2022, at 9:08 a.m.

based on her race, national origin, and color, and was subject to unlawful retaliation. *Id.* Plaintiff did not allege that she was discriminated against based on her sex. *Id.*

On July 25, 2022, the Florida Commission on Human Relations ("Commission") issued its no reasonable cause determination, which Plaintiff acknowledged receiving. ECF 51-1, ex. 9; ECF 51-7 ¶ 5, ex. B. The no reasonable cause determination was made within 180 days of January 27, 2022, the date the Charge was filed with the FCHR.[5] UF's Office of General Counsel received a copy of the no reasonable cause determination via mail on August 1, 2022. ECF 51-7 ¶ 5, ex. B. Plaintiff did not request an administrative hearing within 35 days of the no reasonable cause determination under sections 120.569 and 120.57, Florida Statutes, as required by section 760.11(7). ECF 51-1, 92 – 97, ex. 10, 11; ECF 51-7 ¶ 6. Plaintiff did not participate in an administrative hearing in accordance with section 760.11, Florida Statutes, after the Commission's issuance of the no reasonable cause determination. ECF 51-1, 92 – 96, ex. 10, 11; ECF 51-7 ¶ 6. UF served its First Requests for Admission to Plaintiff on January 25, 2024, through which UF asked Plaintiff to admit that she did not request an administrative hearing in accordance with section 760.11(7), Florida Statutes, within 35 days of the date of determination

---

[5] Pursuant to section 760.11(1), "On the same day the complaint is filed with the commission, the commission shall clearly stamp on the face of the complaint the date the complaint was filed with the commission." The Commission's date stamp on the charge is January 27, 2022, at 9:08 a.m.

of no reasonable cause by the Commission, and that no administrative hearing was ever held after she received the no reasonable cause determination. ECF 51-11. Plaintiff responded to the requests for admission on February 27, 2024, outside of the 30-day period for serving a response, thus admitting that she did not comply with section 760.11(7).[6] ECF 51-12.

## II. ARGUMENT

### A. Plaintiff's FCRA claims are barred

Plaintiff's claims under the Florida Civil Rights Act ("FCRA") are barred because the Commission determined that there was not reasonable cause to believe that a violation of the FCRA occurred, and made the determination within 180 days of Plaintiff's filing of her Charge. Plaintiff's only option was to request an administrative hearing within 35 days of the date of that determination. See § 760.11(7), Fla. Stat. Because Plaintiff did not request an administrative hearing, her FCRA claims are barred. *Id.*

### B. Plaintiff's discrimination claims in Counts I, I(A), II, and II(A) are time-barred

Plaintiff's claims in Counts I and II allege unlawful discrimination pursuant to Title VII. Plaintiff's claims are barred under Title VII because she failed to file a

---

[6] Federal Rule of Civil Procedure 36(a)(3) provides, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

charge of discrimination within 300 days of any viable adverse employment that she alleges to have occurred because of discrimination.

A plaintiff must exhaust certain administrative remedies before filing a suit for employment discrimination under Title VII. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). "The administrative process is initiated by timely filing a charge of discrimination." *Id.* "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." *Id.*; *see also* 42 U.S.C. § 2000e-5(e)(1). Accordingly, only those claims arising within 300 days prior to the filing of the discrimination charge are actionable. *Id.* No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). "In a Title VII case, a plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period." *Watson v. Alabama Farmers Coop., Inc.*, 323 Fed. Appx. 726, 728 (11th Cir. 2009). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice." *Watson*, 323 Fed. Appx. at 728. "The time period for filing a complaint commences at the time an employment decision is made and communicated to the plaintiff, even though one

of the adverse effects of the decision, such as an eventual loss of employment, does not occur until later." *Id.*

Plaintiff filed her charge of discrimination on January 27, 2022. Therefore, the latest date upon which a viable adverse employment action could have occurred for Title VII purposes was April 2, 2021. Plaintiff's alleged adverse employment actions that occurred prior to April 2, 2021, are time-barred.

Through the *Order Denying Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint* ("Motion to Dismiss Order") the Court has already ruled that the discrete discriminatory acts falling between 2015 and October 2020, which includes the 2015 and 2019 promotion denials, and the denial of Plaintiff's sabbatical request with full pay, are time barred. ECF No. 29 at 12. Additionally, all of Plaintiff's other alleged adverse employment actions occurring prior to April 2, 2021, are time barred. The claims include the: (i) changing of Plaintiff's teaching assignments in in 2016, 2017, 2018, 2019 and 2020 (ii) modification of Plaintiff's service loads in 2016, 2017, 2018, 2019 and 2020, (iii) request that Plaintiff pull her promotion application in 2018, (iv) denial of admittance of Ph.D. applications who expressed an interest in working with Plaintiff in 2020, (v) assignment of Ph.D. students who expressed an interest in working with Plaintiff to other faculty members in 2020, (vi) limitation of Plaintiff's opportunities to mentor graduate students in 2020, (vii) surveillance of Plaintiff in 2020, (viii) 2020 request that

Plaintiff step down as the advisor of the Asian Student Public Relations Association, and (ix) denial of Plaintiff's request to teach her classes online. These actions are all discrete acts that cannot form the basis for a continuing violation.[7] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Further, the evidence demonstrates that Plaintiff's "Spring semester 2021" claims outlined in paragraph 44 of the operative complaint are also time barred. Plaintiff's teaching assignments for the Spring 2021 semester were completed on or before October 16, 2020. ECF 51-3 ¶ 5. Plaintiff's service load expectation was the same throughout her tenure at UF with the exception of the Spring 2020 semester, so it was not modified during the statutory period. Ph.D. application decisions, and the assignment of initial faculty advisors, are issued by March 1st each year. ECF 51-3 ¶ 12, 14. Moreover, there is no evidence to support any of these claims, including Plaintiff's allegations that UF limited her opportunities to work with and mentor graduate students, and her supervisor surveillance claim.

The only alleged adverse actions that occurred after April 2, 2021, are Plaintiff's claims that she received her first unsatisfactory rating on research in June

---

[7] In the Motion to Dismiss Order, the Court suggested that the modification of Plaintiff's teaching assignments may be considered as part of a continuing violation. ECF No. 29 at 9. However, the Eleventh Circuit has held that employer modification of work assignments constitutes a discrete act for purposes of Title VII. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008); *see also Freeman v. City Of Riverdale*, 330 Fed. Appx. 863, 866 (11th Cir. 2009).

2021, was "unofficially" made aware that none of her future promotion attempts would be successful in June 2021, had her opportunities to work with graduate students limited, and was subjected to surveillance from her supervisor.[8] Other than the unsatisfactory rating on research, there is no evidence in the record to support these claims. The unsatisfactory rating on research, standing alone, does not qualify as an adverse employment action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240 (11th Cir. 2001). Due to the lack of evidence, there is no evidentiary basis to find that the total weight of these alleged actions constitutes an adverse employment action as provided for in *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). As such, the summary judgment evidence demonstrates that Plaintiff has not raised a single viable adverse employment action that occurred within the 300-day statutory period. UF is entitled to summary judgment on Counts I and II on this basis.

---

[8] Plaintiff never filed an amended charge of discrimination to address the denial of her third promotion attempt in 2023. As such, any discrimination claim based on the denial is not properly before the Court. "Discrete acts of discrimination, such as termination or failure to promote, that occur after the filing of an EEOC complaint must first be administratively reviewed before they may serve as a basis for a judicial finding of discriminatory conduct." *Kelly v. Dun & Bradstreet, Inc.*, 557 Fed. Appx. 896, 899 (11th Cir. 2014). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Additionally, the claim is not properly before the court because it was not alleged in Plaintiff's operative complaint. *See, e.g.*, *Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1367 n.33 (M.D. Fla. 2016) (declining to consider on summary judgment certain adverse actions that were not alleged in plaintiff's complaint).

UF anticipates Plaintiff will argue that her non-discrete claims falling outside of the statutory time period for filing a charge are still actionable under a hostile work environment theory.  This argument fails for three reasons.  First, Plaintiff did not allege a claim for hostile work environment in her operative complaint.  Second, even if the Court construes Plaintiff's operative complaint as containing a claim for hostile work environment, the evidence falls well short of the threshold for surviving summary judgment on a Title VII hostile work environment claims.

Third, as detailed above, there is no evidence of an adverse employment action occurring within the 300 – day period preceding her Charge to anchor a hostile work environment claim within the statutory period.  Courts may consider behavior occurring outside Title VII's statutory time period for assessing liability in a hostile work environment claim "so long as an act contributing to that hostile work environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. Because there is no evidence of an act contributing to Plaintiff's alleged hostile work environment occurring within the 300-day period preceding the January 27, 2022 Charge, Plaintiff's hostile work environment claim is also time-barred.  In sum, each of Plaintiff's claims under Title VII are time barred.

The same analysis applied above to Plaintiff's Title VII claims applies to Plaintiff's FCRA claims.  Plaintiff's Title VII and FCRA claims are identical.  Under the FCRA, a claimant has 365 days from the adverse employment action to file a

charge of discrimination. § 760.11(1), Fla. Stat. The latest date upon which a viable adverse employment action could have occurred for FCRA purposes was January 27, 2021. This 65-day time difference for filing a charge under Title VII and the FCRA does not render any of Plaintiff's untimely claims under Title VII timely for purposes of the FCRA. Plaintiff FCRA claims are additionally barred under section 760.11(1).

## C. Plaintiff cannot otherwise maintain a claim for disparate treatment under Title VII

In addition to the procedural bars, Plaintiff's discrimination claims also substantively fail. Plaintiff's single motive discrimination claims are based on circumstantial evidence. Therefore, Plaintiff must either satisfy the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or present a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker as described in *Smith v. Lock-heed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

### i. Plaintiff cannot establish a prima facie case of discrimination

To establish a prima facie case of discrimination under *McDonnell Douglas*, a plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." *E.E.O.C. v.*

*Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Plaintiff cannot make out a prima facie case because (1) there is no evidence of an adverse employment action occurring within the statutory time period, and (2) Plaintiff has not identified a viable comparator.

Again, Plaintiff's only timely claims are that she received her first unsatisfactory rating on research in June 2021, was "unofficially" made aware that none of her future promotion attempts would be successful in June 2021, had her opportunities to work with graduate students limited, and was subjected to surveillance from her supervisor. The only claim supported by evidence is her unsatisfactory research rating claim. Regardless, none of these actions constitute adverse employment actions for purposes of Title VII. Regarding Plaintiff's "unsatisfactory rating on Research," Eleventh Circuit precedent is clear that employee evaluations, standing alone, cannot constitute adverse employment actions. *See Davis*, 245 F.3d at 1240. Evaluations do not qualify as adverse employment actions unless they result in a material change in the terms and conditions of employment, such as a reduction in pay or benefits, and there is no evidence that Plaintiff experienced a reduction in pay or benefits as a result of the evaluation. *See Rainey v. Holder*, 412 Fed. Appx. 235, 238 (11th Cir. 2011). Similarly, Plaintiff's claims that she was subjected to heightened scrutiny from a supervisor is not an adverse employment action. *See Harbuck v. Teets*, 152 Fed.

Appx. 846, 848 (11th Cir. 2005) (finding "heightened scrutiny," among other things, did not constitute an adverse employment action). UF's alleged limiting of her ability to work with graduate students is not an adverse employment action. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The limitation of a university professor's work with graduate students is not an adverse employment action. *See Aquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001). The claim that she was "unofficially" made aware that any future promotion attempts would not be successful is not a significant change in employment status. Lastly, none of these alleged adverse employment actions were included in Plaintiff's charge of discrimination.

Additionally, Plaintiff has failed to identify any comparator with respect to the adverse employment actions discussed in this section. "[A] plaintiff must show that she and her comparators are 'similarly situated in all material respects.'" *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019). Drs. Spiker and Molleda were only identified as comparators by Plaintiff with respect to the denial of her 2018 promotion application. She has not identified any individuals

who were treated more favorably than her with respect to actions that allegedly occurred during the Spring 2021 semester.

      **ii.**    **Plaintiff cannot demonstrate a convincing mosaic of circumstantial evidence**

There is no "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A common thread in the few cases where the Eleventh Circuit found a convincing mosaic of circumstantial evidence sufficient to preclude summary judgment was the presence of substantial evidence demonstrating that the protected characteristic played a role in the decision-making process for the adverse action. *See Lockheed-Martin*, 644 at 1328; *Holland v. Gee*, 677 F.3d 1047, 1063 (11th Cir. 2012); *Hicks v. City of Tuscaloosa, Alabama*, 870 F.3d 1253, 1257 (11th Cir. 2017); *Smith v. City of New Smyrna Beach*, 588 Fed. Appx. 965 (11th Cir. 2014); *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185–86 (11th Cir. 2019); *Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022).

Here, there is no evidence to support that a timely adverse action occurred, much less any evidence that Plaintiff's gender or national origin played a role in the relevant decisions. Plaintiff has not identified any particular employee of UF who she believes held a discriminatory animus towards her. There is no evidence of any derogatory or preferential comments from the relevant decisionmakers concerning

gender or South Koreans, much less any comments made about Plaintiff. There is no evidence of suspicious timing, ambiguous statements, or any other evidence from which discriminatory intent may be inferred, there is no evidence of systematically better treatment of any similarly situated employees, and there is no evidence of pretext.

**D.**     **UF is entitled to summary judgment on Plaintiff's hostile work environment claim**

First, Plaintiff never alleged a claim for substantive hostile work environment in the operative complaint, and the operative complaint does not allege the requisite elements to state a claim for substantive hostile work environment under Title VII or the FCRA. Plaintiff did not comply with Federal Rule of Civil Procedure 8(a), which provides that a "pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, the claim is not properly before the Court.

Notwithstanding, the summary judgment evidence fails to demonstrate that Plaintiff was subjected to severe or pervasive harassment based on her national origin or gender. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotation

omitted).  A plaintiff wishing to establish a hostile work environment claim must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Id.*

The "severe or pervasive" requirement "contains both an objective and subjective component." *Id.* at 1276. "To be actionable, th[e] behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." *Id.* (internal quotations omitted). In evaluating the objective severity of the harassment, courts consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

There is no evidence to support Plaintiff's claims in the Second Amended Complaint that she was subject to harassment, much less severe or pervasive harassment touching on any of the factors above.  Even when considering Plaintiff's

claims of actions occurring outside of Title VII's statutory time period, there is no evidence that Plaintiff was subjected to any intimidation, ridicule, and insult. Plaintiff did not detail any forms of harassment during her deposition. Plaintiff's claims are nothing more than assortment of gripes regarding her superior's handling of her promotions, teaching assignments, service load, graduate student assignments, and monitoring of her work activities. This is an amalgamation of disparate treatment claims, which should not be combined and transformed, without more, into a cause of action for hostile work environment. *Wade v. D.C.*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011). "Discrete acts constituting discrimination or retaliation claims, therefore, are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). "[D]iscrete acts, such as termination or the failure to promote, cannot alone form the basis of a hostile-work-environment claim." *Kelly v. Dun & Bradstreet, Inc.*, 557 Fed. Appx. 896, 900 (11th Cir. 2014). Plaintiff does not outline any repeated conduct, a hallmark of hostile work environment claims. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Most importantly, the allegations in the operative complaint which the Court relied upon to find that Plaintiff alleged a hostile work environment claim are not supported by the summary judgment evidence. Plaintiff does not even name her alleged harasser.

Second, there is no evidence that any of the alleged harassment was based on Plaintiff's national origin or gender.

Assuming, arguendo, that Plaintiff could otherwise survive summary judgment on a hostile work environment claim, UF is still entitled to summary judgment based on the *Faragher/Ellerth* defense. *Faragher*, 524 U.S. at 775; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The evidence is uncontroverted that Plaintiff did not take advantage of UF's published policies and procedures for reporting discrimination and harassment to UFHR with respect to her claims of harassment by her "supervisor." As such, summary judgment in UF's favor is warranted. *See e.g., Dickerson v. Koch Foods, LLC*, 22-12434, 2023 WL 5348897, at *4 (11th Cir. Aug. 21, 2023).

**E.  UF is entitled to summary judgment on Plaintiff's retaliation claims**

The only evidence of Plaintiff engaging in protected activity is her union representative's mention of discrimination in her Step 2 Grievance form that was submitted on September 24, 2019. As detailed above in section II, B, the only claims that are not time barred are those that occurred between April 2, 2021, and January 27, 2022. Title VII also precludes recovery for discrete acts of retaliation that occur outside the statutory time period. *Morgan*, 536 U.S. at 105. Again, the only alleged adverse action in Plaintiff's complaint that occurred after April 2, 2021, are Plaintiff's claims that she received her first unsatisfactory rating on research in June

2021, was "unofficially" made aware that none of her future promotion attempts would be successful in June 2021, had her opportunities to work with graduate students limited, and was subjected to surveillance from her supervisor. The only claim supported by the evidence is the unsatisfactory rating in her performance evaluation, which is not an adverse employment action. With respect to Title VII retaliation claims, negative performance evaluations, without more, are not material adverse employment actions. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1326 (11th Cir. 2020). Plaintiff has not raised a single viable claim that is not time barred.

Moreover, even if she could establish an adverse action, there is no evidence in the record that Plaintiff's conclusory discrimination claim made in her Step 2 Grievance form was the but-for cause of the alleged adverse actions as required by *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Plaintiff does not describe who took the alleged adverse actions against her, and there is no evidence that unnamed individual(s) was/were aware of, much less took the actions because of, Plaintiff's protected activity. Dr. DiStaso, who drafted the performance evaluation, was unaware that Plaintiff had even made a complaint of discrimination/retaliation prior to Plaintiff's filing of this lawsuit. ECF 51-3 ¶ 21.

Additionally, the temporal proximity between her protected activity – September 24, 2019 – and the alleged retaliatory actions occurring within 300 days

of her charge of discrimination – post April 2, 2021 – is far too great to establish causation.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("mere temporal proximity, without more, must be 'very close.'").

### F.    Constructive Discharge

Plaintiff cannot survive summary judgment on her constructive discharge claim.  There is no evidence to support a hostile work environment claim, much less a constructive discharge claim.  The summary judgment evidence is vastly short of supporting a viable claim for constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job."  *Davis v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021).   "A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."  *Green v. Brennan*, 578 U.S. 547, 555 (2016).  "This objective standard sets a high threshold; it requires a plaintiff to show harassment that is more severe or pervasive than the minimum level required to establish a hostile working environment."  *Menzies v. Ann Taylor Retail Inc.*, 549 Fed. Appx. 891, 895 (11th Cir. 2013).  Notably, the Eleventh Circuit "has required pervasive conduct by employers before finding that a hostile work environment existed or a constructive discharge occurred."  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).  "Constructive discharge cannot be based upon

the employee's subjective preference for one position over another." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986).

Plaintiff testified that she resigned because she felt like she would never receive a promotion to full professor at UF, not because of harassment. The repeated failure to promote does not support a claim for constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Even evidence of a discriminatory failure to promote, combined with an overburdened workload stemming from the failure to promote, is not alone sufficient to support a constructive discharge claim. *See Wardwell v. Sch. Bd. of Palm Beach Cnty., Fla.*, 786 F.2d 1554, 1558 (11th Cir. 1986); *see also Sprowl v. Mercedes-Benz U.S. Int'l, Inc.*, 815 Fed. Appx. 473, 481 (11th Cir. 2020). Nor are poor performance evaluations sufficient to support the claim. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001).

### G.    FCRA Claims

In addition to the procedural bars, UF is entitled to summary judgment on Plaintiff's claims under the FCRA, which are identical to her Title VII claims, for the same reasons set forth in section II, subsections D – F, above. "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, [...], the state-law claims do not need separate discussion and their

outcome is the same as the federal ones." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

## III. CONCLUSION

Based on the above, there is no genuine issue of material fact, and no reasonable jury could return a verdict in Plaintiff's favor on any of her claims. Accordingly, Defendant requests that this Court enter a summary judgment in favor of Defendant on all claims in the operative complaint.

## CERTIFICATION OF WORD COUNT

In accordance with Local Rule 7.1, I hereby certify that this document contains 7,957 words, excluding the case style, signature block, and certificate of service.

Dated this 8th day of August, 2024.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT P.A.

By: */s/ Todd A. Wright*
Michelle Bedoya Barnett
Florida Bar No. 0823201
E-mail: michelle.bartnett@adblegal.com
Todd A. Wright
Florida Bar No. 0071246
E-mail: todd.wright@adblegal.com
E-mail: mailbox@adblegal.com

1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 8, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of this filing to George Harth, Esq., P.O. Box 13115, Gainesville, FL 32604 (gharth@harth-law.com).

*/s/ Todd A. Wright*
Attorney